■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PHILIP NIEVES and NICHOLAS REYES, Respondents. — Order of the Supreme Court, New York County (A. Klein, J.), entered March 16, 1982, which granted defendants' motions to suppress identification evidence, unanimously reversed, on the law and the facts, and the suppression motions are denied. On May 21, 1981, at approximately 3:25 A.M., uniformed Transit Police Officer Joseph James Tuff (Tuff), while driving a marked police vehicle received a radio transmission from his headquarters that there was a robbery in progress near booth 39 in the BMT subway station located at 8th Street in Manhattan. He immediately responded. Upon his arrival, Tuff met David Stutt (Stutt), who was bleeding from the mouth. Despite his injury, Stutt answered Tuff's questions coherently. He informed Tuff that three young men, between the ages of 16 and 19, approached him as he was coming down the stairs that lead into the subway station. One of them knocked him down with a blackjack, while another one held a knife to his throat and removed Stutt's silver money clip and $50 in cash from his person. After this robbery, Stutt said the three youths fled into the street. Stutt described the robbers to Tuff in some detail. Thus, Stutt said "The first male was a * * * Hispanic, or possibly black, approximately five foot five, light complexion. He was wearing sneakers, dungaree pants and had a curly afro * * * Number two was a male black, approximately five four, blue dungaree shirt, blue dungarees, dark complexion, short afro. Number three was a male black, tan hat, dark pants". Thereafter, Tuff drove Stutt to St. Vincent's Hospital for treatment of his injuries. Then, without telling Stutt where he was going, Tuff left the hospital and, with a transit police sergeant, cruised the area where the crime had taken place. Tuff and the sergeant saw four male teenagers together on the east side of Sixth Avenue around Fourth Street, which location was within four or five blocks of the subway station, where the incident had occurred. Three of them matched the descriptions given by Stutt. Tuff and the sergeant got out of the car, and Tuff told the four youths to "halt". At this point, Tuff recognized defendants Philip Nieves (Nieves) and Nicholas Reyes (Reyes) from a prior arrest for a subway robbery. The sergeant and Tuff frisked the four for weapons. Tuff removed a pearl-handled knife from Nieves' right front trouser pocket and the sergeant removed a knife with a wooden handle from the person of Reyes. All of the suspects were advised by Tuff that there had been a robbery and that they fit the description of the robbers. The defendants were handcuffed and transported, together with the two other suspects, in a radio car, to St. Vincent's Hospital. When they arrived at the hospital, the time was about 3:45 A.M., which meant that less than a half hour had elapsed from the time that Stutt first made his robbery complaint. Tuff went inside for Stutt, while the sergeant remained outside with the suspects. Tuff found Stutt seated in the emergency room, and, as he was not being treated at that time, the officer asked Stutt to accompany him outside, so Stutt could view some suspects. Stutt complied with the request, and, under his own power, followed the officer. The four suspects, all with the hands behind their backs, were standing close to the patrol car, underneath a light from a construction site, and all were dressed exactly as they had been when the officers took them into custody. Tuff asked Stutt "Do you recognize [anybody]?" Thereupon, Stutt "looked at the two other individuals and then turned towards the two defendants [Nieves & Reyes]. He walked over, looked them both in the eye and said, 'These are the ones.'" At the time of this identification of the defendants, Stutt was no more than two feet from the

defendants, and there is no evidence that Stutt was under the influence of any medication. In fact, the victim gave an example of both the clearness of his mind, and his accuracy, by his refusal to identify a third man who was wearing a tan hat, as one of the three robbers, because he told Tuff "I'm not sure". The hearing court granted defendants' motions to suppress the identifications, holding that the showup "at the hospital", was an impermissibly suggestive procedure. Based upon our review of the record, we conclude that the hearing court erred in its determination. In general, *hospital room* showups, because they are invariably one-to-one confrontations, are easily susceptible to being unduly suggestive (*People v Cobenais,* 39 NY2d 968); and, therefore, may only be used in most unusual circumstances, such as if there is doubt that the victim may survive (*Stoval v Denno,* 388 US 293, 302; *People v Soto,* 87 AD2d 618). Here, we do not have a *hospital room* showup. In fact, we find no special significance in the circumstances that the identifications took place outside of a hospital building. No credible evidence is contained in the record that indicates that when Stutt made the identifications he was not mentally sound. This victim, though injured, was fully ambulatory and in full control of his mental faculties. All four suspects had their hands behind their backs so that Stutt could not observe that the two defendants were handcuffed. He was certain as to the identification of the two defendants, and when not completely certain of the identification of the third suspect, he so stated. Considering the totality of the circumstances, "the procedures used in [this] showup, which occurred approximately [one-half hour] after the crime * * * were not so suggestive and conducive to irreparable mistaken identification as to violate the standards for such showups" (*People v Digiosaffatte,* 63 AD2d 703). Concur — Murphy, P. J., Sandler, Ross, Kassal and Alexander, JJ.