■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX PRICE, Appellant. — Yesawich, Jr., J. Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered March 8, 1984, upon a verdict convicting defendant of the crime of burglary in the first degree.

On September 17, 1983, at approximately 5:15 P.M., the complainant, 78-year-old Hazel Domery, was in her apartment near the entranceway when a man pushed open the door, knocking her to the floor. In addition to being brutally beaten by the intruder, Domery's glasses were broken, her apartment was searched and $15 in cash was taken. The incident took less than 10 minutes. As soon as her attacker left, Domery called the police; it was then about 5:25 P.M. The police arrived promptly. On their arrival, Domery described her assailant as a black male, six feet tall, with "curly like" hair, who was wearing dark colored pants and black or dark sneakers, a red shirt with yellow trim around the neck, and a tan jacket. Other police units were alerted to watch for a person fitting that description. Domery was taken to the hospital for treatment.

Nearly an hour later, a police officer cruising in a patrol car noticed defendant walking toward him. Since defendant's description appeared to match that of the assailant, the officer called defendant aside and convinced him to accompany the officer to the hospital for a confrontation with the victim. There, Domery, although without her glasses, identified defendant as her assailant. He vehemently protested his innocence. A search of his person, made after his arrest, disclosed no money.

At a preliminary hearing, Domery, the sole witness and still without eyeglasses, failed to identify defendant, and, in fact, she identified another man as the culprit. The charges against defendant were thereupon dismissed. Two weeks later, he was indicted for burglary and robbery. Domery picked defendant out of a fair lineup of five persons two months thereafter; on this occasion Domery wore eyeglasses.

Defendant's motions to suppress the identifications made at the showup and the lineup on the ground that they were impermissibly suggestive, and to disallow any in-court identification of defendant on the ground that there was no independent basis therefor, were denied in toto and the case proceeded to trial before a jury. The People relied primarily on Domery's testimony identifying defendant as her attacker and bolstered that identification with the unobjected-to testimony of three police officers who variously confirmed that Domery had identified defendant at the hospital and also had selected him from a lineup. Defendant presented an alibi defense. The jury ulti-

mately convicted him of the only charge submitted to it, that of burglary in the first degree. In the interest of justice, we reverse the conviction (*see,* CPL 470.15 [3] [c]; [6] [a]).

Absent exigent circumstances, exhibiting a suspect to a witness for identification purposes without the benefit of a lineup is violative of due process (*see, People v Smallwood,* 99 AD2d 819, 820; *People v Brnja,* 70 AD2d 17, 23, *affd* 50 NY2d 366). Hospital room showups are particularly susceptible to being unduly suggestive because they are invariably one-to-one confrontations (*see, People v Cobenais,* 39 NY2d 968; *People v Nieves,* 92 AD2d 837, 838). Here, the possibility of misidentification at the hospital was especially grave since Domery did not have on her glasses when, after just being confined to a hospital bed, she was asked to study a black male in a red shirt presented to her for scrutiny by two police officers. The fact that later, at the preliminary hearing, she concededly identified an innocent man as her aggressor and acknowledged at that time that, "If I had my glasses, I could see better, but without them, the worse I see", simply highlights the susceptibility of this hospital showup to error. Furthermore, the hospital confrontation was not made necessary by reason of any unusual circumstance such as doubt as to the victim's survival (*see, People v Nieves, supra; People v Soto,* 87 AD2d 618, 619). Accordingly, we find the hospital showup to have been improperly suggestive and that the trial court incorrectly decided not to suppress that identification. Allowing use of such evidence only increases the risk of convicting the innocent (*People v Adams,* 53 NY2d 241, 251).

The People observe that there is an independent basis in the record for the victim's in-court identification, specifically, that Domery testified at the suppression hearing that she had observed her attacker in close proximity, under well-lighted conditions, and for approximately a minute; that she was then wearing her glasses and soon thereafter described him to the police with specificity; and that, aided by glasses, she later selected defendant from a representative lineup of five men (*see, People v Blanchard,* 105 AD2d 492, 493). While there is merit to this contention, the fact remains that, given Domery's prior misidentification of another, her identification testimony is at best equivocal and, when considered in conjunction with the manifestly improper bolstering of her testimony by the police officers, the need for a new trial is apparent (*see, People v Dodt,* 61 NY2d 408, 417; *People v Allsbrook,* 105 AD2d 467, 468; *People v Green,* 104 AD2d 451, 452).

We also note that impeachment of defendant by allowing the People to inquire as to the underlying acts of a 1977 conviction

for burglary in the third degree for which defendant received youthful offender treatment would be inappropriate under *People v Sandoval* (34 NY2d 371), and further that although the trial court's minimal charge pertaining to identification testimony was technically adequate, in the circumstances of this case the expanded charge sought by defendant should have been granted (*see, People v Whalen,* 59 NY2d 273, 279).

Judgment reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Albany County for a new trial. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.