■ In the Matter of ROBERT S., a Person Alleged to be a Juvenile Delinquent, Appellant.—Order, Family Court, Bronx County (Harold J. Lynch, J., at suppression and disposition hearings), entered February 28, 1989, which determined that respondent committed acts which if committed by an adult would constitute criminal possession of a controlled substance

in the third degree, and placed respondent with the Division for Youth at a Title II facility for up to 18 months, affirmed, without costs.

Respondent does not dispute that the personal observations of Officer Michael Sweeney, the prosecution's sole witness at the suppression hearing, made with binoculars atop the roof of a three-story building above the arrest site provided probable cause for the arrest of respondent and his accomplice if Sweeney were the only officer involved (*People v McRay*, 51 NY2d 594). At issue is whether there was sufficient evidence for the hearing court to conclude that Officer Sweeney transmitted these observations over his police radio to the backup police team on the ground, who grabbed and detained the two juveniles before Officer Sweeney himself arrived a minute later and formally placed them under arrest. Of course, if that transmission was made by Officer Sweeney and received by the other police team members, the subsequent arrest and seizure of the contraband were lawful in this case (*People v Lypka*, 36 NY2d 210; *People v Horowitz*, 21 NY2d 55, 60). As stated in the dissent, Officer Sweeney testified that just prior to his hasty departure from the roof on route to the crime scene below he "believed" he made a radio transmission to his backup team. This testimony, coupled with Sweeney's description of the actions of the two police team members first on the scene, permitted Family Court to draw the inference that the transmission was made and received (*People v Rockwell*, 137 AD2d 874; *People v Oates*, 104 AD2d 907, 910). As was stated in *People v Hartley* (103 AD2d 935, *affd* 65 NY2d 703): "In reviewing the suppression court's rulings we note that, where different inferences may be drawn from the proof, the choice of inferences rests with the trier of fact and should not be rejected by an appellate court unless unsupported as a matter of law".

Clearly, that is not the state of the record here, where at best only conflicting inferences are presented.

For these reasons, we would affirm the order appealed from. Concur—Murphy, P. J., Sullivan and Wallach, JJ.

Carro and Rubin, JJ., dissent in a memorandum by Rubin, J., as follows: This case raises the question of exactly what constitutes probable cause to apprehend a suspect and seize evidence of the commission of a crime. The pertinent facts were related by Police Officer Michael Sweeney, who was the only witness to testify on behalf of petitioner presentment agency.

In the early evening of December 31, 1988, approximately six Housing Authority police officers went to the Edenwald Housing Project, deploying in the vicinity of 1132 East 229th Drive South in the Borough of The Bronx. The Edenwald Project is considered a "target area", and the building in particular is the site of heavy drug traffic.

Officer Sweeney proceeded to the roof of 1155 East 229th Drive South, a three-story building located directly across a small street from the lobby of the building under observation. From his vantage point approximately 100 feet away, with the aid of his own binoculars, Officer Sweeney testified that he was able to observe respondent Robert S. and another individual, Duane W., who were in the lobby or on a ramp directly in front of the lobby, selling what appeared to be vials of crack to persons who approached them with what Sweeney believed to be United States currency and immediately departed with the illicit merchandise. The only persons who remained on the scene were respondent and his companion. No one else was seen entering or leaving the building under surveillance during the 10-minute interval when Officer Sweeney carried out his observation of the suspects.

At about 6:50 P.M., Officer Sweeney testified that he believed he made a radio transmission to his backup team, stationed in a van or perhaps on the street. He has no recollection as to whom he spoke or what was said. His testimony does not even indicate if the transmission was acknowledged or if the radio was working. In any event, members of the backup team approached the suspects who were standing on the ramp directly in front of the lobby of 1132 East 229th Drive South. Officer Sweeney ran from the roof down the stairs to the street and, as he left the building and turned the corner to approach the scene, he saw "Officer O'Brien and my Sergeant entering, going up the ramp of the building, and I was behind him." Sergeant Quinones blocked the lobby to prevent the suspects from running into the building, and Officer O'Brien grabbed them both. As O'Brien escorted them back towards the lobby, Officer Sweeney observed Robert S. remove a clear plastic bag from his pocket and drop it to the floor. Officer Sweeney recovered the bag, which contained vials of crack, and placed both of the suspects under arrest. He also recovered $148 from respondent and $1,200 from Duane W. Officer Sweeney estimates that from the time he left his observation post on the roof of the three-story building to the time he approached the scene of the arrest, approximately one minute elapsed.

The theory advanced at the *Mapp (Mapp v Ohio,* 367 US 643) hearing is that, in the absence of testimony from Officer Sweeney that he relayed sufficient information to Officer O'Brien that would provide him with probable cause to apprehend the suspects, there was no basis for their apprehension and search and, therefore, the evidence must be suppressed. Petitioner presentment agency contends, on this appeal, that "Police Officer Sweeney's personal observations of appellant's illegal drug transactions can be imputed to his 'backup' team or, more particularly, to Police Officer O'Brian *[sic]* and Quinones."

The petition taken by petitioner is not without support. The Court of Appeals summarized the law in this area in *People v Horowitz* (21 NY2d 55, 60): "The controlling principle seems to be that it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest." This principle was more recently stated in *People v Brnja* (50 NY2d 366, 373, n 4): "The arresting officer acts with probable cause when he arrests on the direction of a fellow officer who has probable cause or without such direction on the basis of information received from a fellow officer who testifies at the suppression hearing concerning how be obtained his knowledge, which information itself or together with that known to the arresting officer establishes probable cause *(People v Havelka,* 45 NY2d 636; *People v Horowitz,* 21 NY2d 55; see *People v Lypka,* 36 NY2d 210; *Whiteley v Warden,* 401 US 560; La Fave, Search & Seizure, § 3.5 [c])."

Respondent does not dispute that Officer Sweeney possessed probable cause to arrest him. Thus, it is clear that "the police as a whole" had a sufficient basis to effect respondent's arrest. Respondent's attack on the legality of the police conduct is aimed at the alleged communication which precipitated his apprehension. In essence, he argues that petitioner has failed to demonstrate that the information, if any, received by Officer O'Brien was sufficient to give O'Brien probable cause to arrest respondent. The issue presented, therefore, is whether O'Brien acted "upon the direction of or as a result of communication with a superior or brother officer" in accor-

dance with the principle enunciated in *People v Horowitz (supra,* at 60) and *People v Brnja (supra).*

An assessment of the propriety of a search and seizure involves weighing the government's interest in law enforcement and the encroachment upon the individual's right to privacy and personal security *(People v Cantor,* 36 NY2d 106, 111). Under the facts at bar, it cannot be said that the governmental intrusion represented by Officer O'Brien's apprehension of respondent was "undertaken with intent to harass or [was] based upon mere whim, caprice or idle curiosity" *(People v De Bour,* 40 NY2d 210, 217). The burden nevertheless remains on the People to demonstrate upon a suppression motion, that the apprehending officer, as opposed to another member of his team who came upon the scene, possessed sufficient information that a crime had been committed *(People v De Bour, supra,* at 223) or that the apprehending officer detained the suspects at the direction of a brother officer who possessed the requisite probable cause *(People v Brnja,* 50 NY2d 366, 373, n 4, *supra; People v Horowitz,* 21 NY2d 55, 60, *supra).*

The testimony of Officer Michael Sweeney establishes, in detail, the basis of his knowledge of the illegal activity in which respondent and his accomplice were engaged, thus fulfilling one requirement set forth in *Brnja (supra).* What is absent, however, is any testimony as to whether Officer Sweeney directed Officer O'Brien to detain the suspects. And, *since he did not testify,* the arrest cannot be sustained on the basis of O'Brien's personal observations of their activity *(People v Havelka,* 45 NY2d 636, 641, *supra).*

Therefore, I would reverse the order of the Family Court and dismiss the delinquency petition.