■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RADAMES RUIZ, Appellant.—Judgment, Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered November 21, 1988, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree and sentencing him, respectively, to an indeterminate term of imprisonment of from 1 to 3 years and a conditional discharge, is unanimously modified, on the facts, to reverse defendant's conviction of criminal sale of a controlled substance in the third degree, to dismiss that count of the indictment, and to vacate the sentence imposed thereon, and otherwise affirmed.

In order to find defendant guilty of selling cocaine, the jury had to decide that the two vials introduced at trial, which were found upon chemical analysis to contain cocaine, were the same vials that the undercover officer purchased from defendant in the buy operation of April 12, 1988. The vials so purchased were described by the undercover officer as having blue tops in the voucher he prepared immediately upon his return to the precinct in the afternoon of the buy operation, in the police report he prepared that evening, and in testimony he gave to the Grand Jury six weeks later in May 1988. However, at the trial conducted in October 1988 six months after the buy operation, the vials introduced in evidence had green tops, not blue. Asked on direct examination to "account" for this discrepancy, the undercover officer stated, "I made a mistake." Asked on cross-examination when he became aware of this mistake, he replied, "Last week." Asked further on cross whether this was when he met with the Assistant District Attorney to prepare for the trial, he answered, "No. I picked up the mistake myself." On redirect, the prosecutor showed the undercover officer the police report he

prepared, pointed out that word "blue" had been crossed out, and asked him to explain "the reason for that being crossed out", to which he replied, "Because it [referring to the word 'blue'] was a mistake. To correct the mistake." However, asked by the prosecutor, "Do you recall when you corrected it?", he answered, "No, I don't." On recross, defendant's attorney, probing this failure of recollection, reminded the undercover officer of his testimony that he had first realized his mistake only "[l]ast week", and asked him whether he crossed out the word "blue" in his report "last week", to which he replied, "No, I didn't change it a week ago. If it was changed, it was changed in April [referring to the time frame of the buy operation]." Nonplussed, defense counsel interjected, "But before last week you didn't know there was a mistake, is that correct?", to which he replied, "That's correct." Pressed whether he could "say for sure when this report was changed", he answered, "Well, it wasn't changed last week." Asked simply, "Officer, do you remember crossing out the word blue here?", he answered, "No, I don't."

Given that the People accept, and indeed represent in their brief, that it was the undercover officer who crossed out the word blue and not someone else, his testimony that this excision could only have been made in April made nonsense of his earlier testimony that he did not even realize that a mistake had been made until the week before he testified; his testimony that the excision could only have been made in April was also inconsistent with the fact that in May he testified before the Grand Jury that the vials were blue. A mistake does not exist, as it were, in the air; it cannot be corrected before it is discovered. If the undercover officer made a mistake in describing the vials as blue when they were green, it would not be to ask too much of him to come forward with a forthright, coherent, credible account of just when and how this mistake was discovered. Absent such an account, the assertion of a mistake is conclusory and lacking in credibility, and should have been rejected by the jury. If, as the jury apparently found, the undercover officer's identification of defendant as a person who handed him vials on April 12, 1988 was credible, the jury also should have found that the vials so obtained from defendant were not the ones introduced in evidence.

At trial, the undercover officer did not actually identify the vials that were introduced in evidence. Instead, he identified the "security envelope" into which he said he placed the vials he purchased from defendant when he vouchered them at the

precinct. This same envelope, although again not the vials themselves, was identified by the police chemist, who testified that it was she who broke the lock thereon and removed therefrom two vials the contents of which tested positive for cocaine. If, arguendo, this proof of a chain of custody and control be deemed legally sufficient to show that the vials purchased from defendant were the same as those introduced in evidence, the fact remains that there is other proof, supplied by the voucher and police report, showing that the vials were not the same. Whether one concludes that the latter is stronger than the former, or, that at best, the evidence is equivocal on this point, in either event, under any fair interpretation of the evidence, the People must be held to have failed to establish this essential element of the crime with an adequate level of proof. To believe that the vials were the same, the jury would have to believe that the undercover officer put green vials into the envelope while simultaneously describing them as blue in his voucher, and then, six months later, somehow intuited his mistake. To believe that the vials were not the same, the jury would have to believe only that blue vials purchased from defendant got mixed up with green vials somewhere along the chain of custody and control. In this last regard, the record contains proof that the undercover officer made five purchases on April 12, 1988; that while the undercover officer's name was printed on the security envelope, it did not bear his signature, and that this was a departure from normal vouchering procedures; and that it was also a departure from normal vouchering procedures not to have placed identifying markings on the vials themselves. Accordingly, the judgment should be reversed, on the facts, to the extent it convicted defendant of criminal sale of a controlled substance in the third degree, and that count of the indictment dismissed, on the ground that the jury's verdict is against the weight of the evidence (CPL 470.15 [5]; 470.20 [5]; *People v Bleakley,* 69 NY2d 490). Concur—Sullivan, J. P., Ross, Kassal, Ellerin and Wallach, JJ.