■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKY BELLINGER, Appellant.—Judgment, Supreme Court, New York County (Jerome W. Marks, J., at hearing; Harold J. Rothwax, J., at trial and sentence), entered July 24, 1989, which convicted defendant, after jury trial, of robbery in the second degree (Penal Law § 160.10 [1]) and sentenced him to an indeterminate term of imprisonment of from 4 to 12 years, unanimously affirmed.

Complainant was attacked and robbed by three men on January 24, 1989 at approximately 5:00 P.M. while walking on Canal Street in the City and County of New York. He was grabbed from behind and held by one assailant as two accomplices each held one of his wrists with one hand and reached into his pockets with the other. Complainant noted that defendant, the attacker standing to his left, was a black man, about 5 feet, 8 inches tall, clean-shaven, with a round, wide face, wearing a green jacket, light-colored shirt with thin horizontal stripes and a baseball cap. The attack was wit-

nessed by a storeowner, who grabbed a pipe and, together with one of his employees, pursued the trio across Canal Street and north on Mercer Street. The chase was joined by Officer John Granowski who was patrolling on a motor scooter. Defendant split off from his accomplices, who continued to be followed by the three pursuers and were ultimately stopped by Officer Granowski.

Officer Alex Mastroianni and his partner Michael Ricci heard radio reports regarding Officer Granowski's pursuit of the robbery suspects which described their clothing and gave their approximate ages as between 18 and 20. The officers drove south on Greene Street towards the scene in heavy traffic. They left their car about 30 feet from Canal Street and encountered a man who told them that he had been following "three or four guys" for several blocks and stated, "The kids you're looking for have broken up." The man directed the officers to a nearby pizzeria where he pointed out defendant to Officer Mastroianni. The officer noted that defendant was perspiring "profusely" and, placing his hand on defendant's chest, felt that his heart was beating rapidly. He and his partner then escorted defendant to the spot where the other two suspects were being detained, about 25 yards away. Defendant was told he would be "cut loose" if there was "nothing wrong".

Meanwhile, the storeowner had identified defendant's two accomplices, whom he recognized by their clothing, as they stood near a wall, next to a group of police officers and civilians gathered between Grand and Canal Streets on West Broadway. Defendant arrived several minutes later, whereupon the witness indicated that he was not entirely certain that defendant was the other participant in the robbery.

Complainant then arrived in a police car, which parked about 30 feet from where defendant, his accomplices and several other suspects were standing. The suspects were next to a wall, apart from the people around them but not wearing handcuffs or otherwise restrained. Complainant identified defendant as one of his attackers, referring to him as "the guy in the green jacket." This identification took place within 10 minutes after commission of the robbery.

Based upon information received in radio transmissions, Officers Mastroianni and Ricci had a reasonable suspicion that a crime had been committed (People v De Bour, 40 NY2d 210, 223). The unfolding circumstances, including information supplied by the man who pointed out defendant to the officers, indications of defendant's recent physical exertion and the

short distance to the location where the robbery took place, were sufficient to suggest to the officers that defendant was in recent flight from the scene of that crime *(see, People v Rivera,* 159 AD2d 281, *lv denied* 76 NY2d 795). In this situation, it was proper to escort defendant a short distance for a confirmatory identification *(People v Hicks,* 68 NY2d 234; *People v Liner,* 133 AD2d 555, *appeal dismissed* 70 NY2d 945).

Because of its close proximity in time and location to the point of his detention, the showup identification of defendant was not constitutionally infirm *(People v Brnja,* 50 NY2d 366, 372). Nor was it "so unnecessarily suggestive as to create a substantial likelihood of misidentification" *(People v Duuvon,* 160 AD2d 653, *affd* 77 NY2d 541). Even assuming, as defendant maintains in his brief, that he had already been identified by the witness, complainant's subsequent identification was not "presumptively forbidden" *(People v Duuvon,* 77 NY2d, *supra,* at 545). However, where the proof adduced at the hearing supports different inferences, the rulings of a suppression court will not be disturbed unless unsupported as a matter of law *(Matter of Robert S.,* 159 AD2d 358, 359, *appeal dismissed* 76 NY2d 770, citing *People v Hartley,* 103 AD2d 935, *affd* 65 NY2d 703). We conclude that the resort to a showup identification was reasonable under the exigent circumstances of this case. The witness and complainant viewed the suspects at different times and positively identified different participants in the robbery *(compare, People v Adams,* 53 NY2d 241) distinguishing them from other suspects present at the scene *(People v Nieves,* 92 AD2d 837).

Defendant's other contentions have been examined and found to be without merit. Concur—Sullivan, J. P., Carro, Milonas, Asch and Rubin, JJ.