■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DANIEL QUINONES, Respondent. [595 NYS2d 442] —Order of the Supreme Court, New York County (Stephen G. Crane, J.), entered April 9, 1992, which set aside defendant's conviction, after jury trial, of criminal possession of a controlled substance in the first degree, and directed a new trial, unanimously reversed, on the law, and the conviction reinstated.

At the time of his arrest, defendant was seen tossing three clear plastic sandwich bags, appearing to contain crack cocaine, to an accomplice who threw them out of a window. A backup officer on the street observed a young, teen-aged girl wiping a white, powdery substance out of her hair and recovered a clear plastic sandwich bag lying nearby as well as some small chunks of a substance from the pavement near the bag. Upon inspection, the bag was seen to have a tear in its side.

A second backup officer also recovered a clear plastic bag that was apparently undamaged and had a knot tied at the top. The two bags were handed to a third officer who placed them in a brown paper bag. This officer testified that he "believed" he placed the loose pieces of crack into the brown paper bag and not the torn plastic bag. The evidence was turned over to the arresting officer who then vouchered it, in accordance with standard procedure, in the presence of the Precinct desk officer. At trial, both of the officers who had recovered the bags identified the knotted bag as the one that he had recovered from the street.

A police chemist testified that the evidence packet containing the two plastic bags and a brown paper bag was received with the seal intact. The chemist did not recall putting the knot in the first bag but responded affirmatively to the trial court when asked if it was his habit to knot bags in this fashion. The chemist could not remember if any pieces had fallen out of the bags during handling or if pieces had fallen into the brown paper bag. Nor did he recall the condition of

the bags. He further stated that he was not obliged to indicate, in his notes, whether the bags had holes in them.

The bags were removed from the evidence packet and exhibited to the jurors at trial, at which time it became apparent that the knot in one bag concealed a hole the size of a quarter and that the second bag had a 3 to 4-inch tear down the side, through which the contents spilled out.

On cross-examination of the police chemist, it was elicited that the chunks of crack were noted to contain moisture and that the samples were dried before weighing. None of the police officers noted any wetness in the substance, and the weather conditions at the time of defendant's arrest were clear and dry. However, the chemist testified that moisture could be present as a result of "many things", including the crack having been "just cooked".

The jury returned a verdict of guilty on the charge of criminal possession of a controlled substance in the first degree. Defendant moved to set aside the verdict on the ground the drugs were erroneously admitted into evidence. Defendant argued the People had not complied with the foundation requirements of *People v Julian* (41 NY2d 340) by demonstrating that the evidence received was recovered at the crime scene and had not been tampered with. Supreme Court denied the motion, holding that any conflict in the testimony of the officers who recovered the evidence went to the weight, but not the admissibility, of the evidence pursuant to *People v Sarmiento* (168 AD2d 328, *affd for reasons stated* 77 NY2d 976). The court further found that the presence of moisture in the sample analyzed by the police chemist was adequately explained by his testimony.

Upon reargument of the motion, however, the court concluded that, as a result of the number of discrepancies in the condition of the evidence from the time it was recovered by the police to the time it was analyzed, "we have transcended the *Sarmiento* rule" that the discrepancies go only to the weight of the evidence. As authors of that rule, we do not agree.

The question presented is whether the record on appeal supports any of Supreme Court's findings of discrepancies in the condition of the evidence. The court states that the police recovered "one bag that was not ripped and one that was, and both bags ended up in the hands of the chemist in a ripped condition, there's no explanation for that." In fact, when the knotted bag was being exhibited to the jury, it was the court

that observed, "There's a hole in it where the knot was concealing the hole. But the bottom of the bag containing the substance has no tear or break." In addition, the police chemist testified that he had no recollection of the condition of the bags, nor was it his duty to make a note of the condition of the bags. Therefore, the testimony simply does not support the conclusion that their condition at the laboratory was any different from the time of the recovery of the bags at the scene so as to preclude admission of the contents into evidence *(People v Connelly,* 35 NY2d 171, 174).

The same may be said of the court's conclusion that the absence of chunks of crack cocaine in the brown paper bag indicates that the evidence received at the laboratory was not the same as that vouchered by the arresting officer. Contrary to the court's finding, however, the police chemist did not testify that there were no loose particles in the brown paper bag. Rather, he testified that he did not recall whether any of the drugs had spilled out of either bag, but confirmed that his report made mention of only the contents of the two plastic bags. It is hardly unlikely that the presence of a several-inch tear in one of the bags might have led the chemist to assume that any loose sample came from the torn bag. The court itself, upon noticing that the contents were spilling out when the bag was exhibited to the jurors, directed the court officer, "Keep it over the envelope. The substances are spilling. Put it back in."

While the "wetness" or moisture content of the sample was deemed by the Trial Justice to have been adequately explained by the chemist's testimony that it was recently "cooked", it should be further observed that there was no testimony by the chemist to the effect that the substance felt wet to the touch. In fact, he testified that the sample was handled only with rubber gloves and that moisture was detected only by placing the substance on tissue and observing wetness on the paper. Therefore, the absence of any observation of "wetness" in the drugs by the police officers who recovered them at the scene does not necessarily contradict the police chemist's finding, by more scientific means, that the drugs contained sufficient moisture to affect the weight of the sample.

The only discrepancy supported by the record before us is in the testimony of the two backup officers, each of whom identified the same bag as the one he recovered at the scene. It is clear, however, that two bags containing what appeared to be crack cocaine were received from the two officers and vouch-

ered as evidence. The testimony adduced at trial is sufficient to establish a chain of custody from the time of recovery to the time of analysis and, any discrepancy in the testimony of the officers goes only to the weight, and not the admissibility, of the evidence *(People v Sarmiento, supra)*. Finally, we note that even if some of the sample spilled out of the bag during analysis, the drugs presented in evidence had an aggregate weight of over four ounces, which is sufficient to sustain conviction for criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]). Concur—Sullivan, J. P., Wallach, Kupferman, Kassal and Rubin, JJ.