■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GOLDIE JACKSON, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered February 22, 1982, upon a verdict convicting defendant of four counts of the crime of robbery in the first degree. ¶ In the early morning of August 13, 1981, a robbery occurred at a hotel located in the City of Albany. The only witness was the night auditor employed by the hotel who was shot. On this appeal, defendant challenges the trial court's determination of his *Wade* and *Huntley* motions as well as the introduction into evidence of portions of a prior statement made by an alleged accomplice of defendant. ¶ At the *Wade* hearing, the prosecution announced its intention of calling upon the witness to make an in-court identification of defendant. When that witness was originally interrogated by the police in the intensive care unit of the hospital to which he was taken after the shooting, he stated that four black men had participated in the crime. About three weeks thereafter, he was given an array of 11 photographs of black men and asked if he could identify any of them as being at the scene of the crime. He was unable to make a positive identification, but he selected three photographs as possibilities. One was a photograph of defendant. Defense counsel objected to an in-court identification because he contended that viewing the photographs selected by the police was impermissibly suggestive. It was developed that the witness had an opportunity to observe defendant for approximately 15 to 20 seconds and that he noted his muscular physique and general appearance. The trial court viewed the photographs and found that they were not suggestive. Based on the circumstances, we conclude that there was no " 'very substantial likelihood of irreparable misidentification' " (*Manson v Brathwaite*, 432 US 98, 116, quoting *Simmons v United States*, 390 US 377, 384). ¶ At the *Huntley* hearing, the prosecution had the burden of showing that defendant made a voluntary, knowing and independent waiver of his Fifth Amendment privilege against self incrimination (*People v Hopkins*, 86 AD2d 937, 938, affd 58 NY2d 1079). Defendant was questioned by the police in the parole office on August 26, 1981. During the course of about an hour of interrogation, defendant orally admitted his participation in the robbery. He sought to suppress those statements, contending that he was never given his *Miranda* warnings and that the police denied his request for counsel at the beginning of the interrogation. The trial court, after hearing the evidence, decided each of the contentions against defendant. In doing so, it relied upon testimony of the police officers as well as the parole officers who were present. The evidence was sufficient to satisfy the court beyond a reasonable doubt. Great deference must be allowed the findings of fact made by the trial court at such a hearing (*People v Yukl*, 25 NY2d 585, 588, cert den 400 US 851), and those findings must be honored unless unsupported as a matter of law (*People v Leonti*, 18 NY2d 384, 390, cert den

389 US 1007). Credibility is an issue of fact and, in the absence of extraordinary circumstances, the trial court's determination thereof should not be disturbed (*People v Hopkins, supra,* p 938; *People v Wright,* 71 AD2d 585, 586; see, also, *People v Knighton,* 91 AD2d 1077, 1078). ¶ The trial court gave great consideration to the possibility that defendant's parole officer unduly influenced defendant in cooperating with the police. It was established that during the course of the interrogation, defendant did seek and rely upon advice given to him by his parole officer. The advice given was nothing other than to "clear the air" and "to tell the police what you know". We find nothing coercive in this advice (see *People v Perry,* 77 AD2d 269, 272-273) and conclude that no undue influence existed. ¶ A novel issue is created by the trial court's ruling on the admissibility of a prior statement made by a participant in the crime whom the prosecution called to the stand. Prior to this trial, Ray Eaddy had entered a plea of guilty to having participated in the robbery and, as part of his plea bargain, had agreed to testify on behalf of the prosecution at defendant's trial. Shortly before the commencement of the trial, Eaddy's counsel informed the prosecution that his client would exercise his Fifth Amendment rights and refuse to answer questions. He did exactly that. The trial court then made the determination that if the witness continued to exercise his Fifth Amendment rights, the prosecution would be permitted to introduce his prior written statement into evidence. This was error. ¶ In criminal matters, impeachment of a party's own witness is controlled by CPL 60.35. This section provides that when the testimony of a witness called by a party tends to disprove the position of such party, prior written or oral statements given under oath may be introduced. Conversely, if the testimony does not tend to disprove the position of the party, prior inconsistent statements are not admissible. The refusal of the witness to answer questions based upon his Fifth Amendment immunity did not "tend to disprove" the prosecution's case and, thus, impeachment was improperly permitted by the trial court (see *People v Fitzpatrick,* 40 NY2d 44). Although it was error, we believe it to be harmless error in light of all the other evidence. Defendant's oral admission and the hotel clerk's identification of him are so persuasive (*People v Bretagna,* 298 NY 323, 326, cert den 336 US 919) as to render the improper impeachment of the witness to be harmless error (*People v Crimmins,* 36 NY2d 230). ¶ Judgment affirmed. Kane, J. P., Main, Casey, Levine and Harvey, JJ., concur.