(October 18, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE BLANCHARD, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered June 15, 1982, upon a verdict convicting defendant of three counts of the crime of robbery in the first degree.

At trial, the People's case rested primarily on the testimony of four witnesses. Raymond Eaddy, an accomplice, testified that he drove defendant and others to the scene of the robbery, a hotel in the City of Albany, and that a few minutes after entering the hotel, defendant, carrying a silver pistol, ran back to the car where he declared, "I shot a dude." Gary Geiger, a night auditor at the hotel, identified defendant as the man carrying the silver pistol; in the course of the robbery Geiger had been threatened, hit on the head with a gun butt and later shot in the stomach. Michael Bachleda testified that he saw a car matching the description of Eaddy's car, with motor running and a black person behind the steering wheel, stationed outside the hotel at the time of the robbery. In an effort to show defendant's consciousness of guilt, his parole officer was permitted to testify that, following the robbery, defendant failed to attend his regularly scheduled bimonthly parole meetings and that approximately four months later he was located in the State of Illinois. Defendant was found guilty of three counts of first degree robbery and sentenced to concurrent 12½- to 25-year terms of imprisonment on each count.

Initially, defendant contends that the trial court improperly denied his motion to suppress Geiger's in-court identification testimony. Defendant's argument that the out-of-court photographic identification procedure was so inherently suggestive as to deprive him of his right to a fair trial has heretofore been considered and rejected by this court in *People v Jackson* (101 AD2d 955). Jackson allegedly was one of defendant's accomplices and the identical photo array attacked here was challenged there and found not to be suggestive. As for the contention that the People failed to sustain their burden of proof on the issue of whether there was an independent basis for Geiger's in-court identification, the record discloses that Geiger viewed defendant in a well-lighted area from a distance of two feet for five to seven seconds. Although he was initially able only to give a general description of his assailants, Geiger identified defendant with certainty at both the lineup and trial. The fact that a six-month period elapsed between the crime and the lineup does not preclude establishment of an independent basis for identification (*People v Hall,* 81 AD2d 644). Furthermore, in *People v Jackson* (*supra*), which was based essentially on the same facts, we concluded that the evidence supported the trial court's determination that Geiger's in-court identification had an independent basis.

Even if that identification was tainted, the other evidence adduced at trial amply establishes defendant's guilt. Eaddy's testimony was corroborated by Bachleda, who confirmed that a car matching Eaddy's was in the hotel parking lot during the robbery; by Geiger, who attested that he was shot by a robber carrying a silver pistol; and by the general manager of the hotel, who testified that $150 was missing from the cash register. Without more, Eaddy's testimony established guilt beyond a reasonable doubt (see *People v Tillotson,* 63 NY2d 731). While the probative force of the parole officer's testimony respecting defendant's flight following the crime is at best of slight value, as the trial court charged, it too was corroborative. Allowing it into evidence did not, as defendant maintains, constitute reversible error since the crime for which he was on parole was unrevealed and, more importantly, the jury was immediately and properly instructed that defendant's being on parole was only to be considered as it impacted on the question of flight (see *People v Reddy,* 261 NY 479).

Nor do we find persuasive the contention that the jury's verdict was coerced by the trial court. When the jury announced that it was deadlocked for the second time, it had actually been deliberating approximately 13 hours over a two-day period. An

*Allen* charge was then given following which the jury resumed deliberating; on two occasions during these deliberations, the jury requested portions of the main charge to be read. After two more hours of deliberation, the jury announced its verdict of guilty. How long a disagreeing jury may be kept together is a matter of sound judicial discretion (*People v Presley,* 22 AD2d 151, 154, affd 16 NY2d 738); we do not perceive that discretion as having been abused here.

Judgment affirmed. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.