■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WYNN H. SHELDON, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered June 15, 1983, upon a verdict convicting defendant of the crime of robbery in the third degree.

On December 24, 1982, at approximately 10:00 A.M. on a street corner in the City of Albany, a male teen-ager came up from behind 78-year-old Alexandra Herzog and snatched her umbrella and pocketbook, which contained about $60. Herzog pursued the purse snatcher, saw him joined by another male teen-ager, and then watched both of them as they ran and disappeared down an alleyway. She later described her assailants as two black teen-agers in their mid to late teens, with the second teen-ager being the taller of the two.

On December 28, 1982, another purse snatching occurred at the same Albany street corner. Willie Martin, a witness to that crime, rode with the police in search of the perpetrator. Martin spotted defendant and said, "There's the guy that mugged the woman." Detective Donald Gavigan jumped out of the vehicle and grabbed defendant, who was later interrogated at the police station concerning the purse snatching that occurred that day. Defendant gave a statement that was later reduced to writing. In that statement, defendant allegedly confessed to participating in another crime involving the taking of a shopping bag containing pizza dough from a woman. This statement was also reduced to writing.

Defendant was also questioned about the Herzog purse

snatching. Defendant confessed to this robbery and described where Herzog's pocketbook was discarded. This statement was also reduced to writing and all statements were signed by defendant. Gavigan later said defendant was questioned for approximately 1 to 1½ hours while two other detectives were in and out of the room. Gavigan asserted that no unlawful force or police brutality was used in obtaining these statements.

Defendant eventually was charged with robbery in the third degree for the Herzog purse snatching. At a pretrial suppression hearing, defendant testified that he was beaten by the police and forced to make the confessions to the robberies. County Court denied the motion to suppress the oral and written statements. Trial commenced on May 24, 1983 and the proof was closed on the following day. On May 26, 1983, following summations and the charge, the jury began deliberations at approximately 11:00 A.M. and eventually rendered a verdict on the morning of May 28, 1983, convicting defendant of the charged crime. He was sentenced to 2⅓ to 7 years' imprisonment and this appeal ensued.

Turning to the first issue, defendant alleges that County Court abused its discretion by failing to declare a mistrial requested by defendant on the ground that the jury was deadlocked. Defendant further argues that the continued deliberations sanctioned by County Court coerced the verdict. We find that defendant's arguments have merit.

The jury first retired to the jury room for deliberations on May 26, 1983 at about 11:00 A.M. Thereafter, on the same day the jury requested that the testimony of two of the testifying police officers be read back to it, after which it retired for further deliberations. Subsequent to a lunch break, the jury requested that the testimony of defendant's mother be read. At approximately 4:00 or 5:00 P.M., the jury sent this note: "We have a deadlock vote official." County Court advised the jurors that the law required that they deliberate an extensive period of time and that, in the court's judgment, they had not done so. County Court sent the jury back for further deliberations followed by a dinner break. Later the same night, the jury advised County Court in writing: "Your Honor, unfortunately we, the jury, are in a locked-in vote of seven not guilty, five guilty. Essentially this has not changed since 3 P.M. this afternoon. No one seems to indicate they will change their vote." Nevertheless, County Court again determined that the jury had not deliberated an extensive period of time and, as it was about 10:00 P.M., directed that the jury take up its

deliberations in the morning. Thereafter, the jury was sequestered in a motel for the night.

Jury deliberations again commenced on May 27, 1983 at about 9:30 A.M. Within 45 minutes, defense counsel moved for a mistrial on the ground that the jury appeared to be deadlocked and County Court was implicitly coercing the jury to reach a verdict by sending it back to further deliberate. The court commented that because the jury had earlier in the morning asked for additional testimony and instructions to be read and since, in the judgment of the court, the jury had not deliberated for an extensive period of time, the application was denied. The requested information was then read to the jury. Later that same day, the jury advised County Court in writing that it had not yet reached a fully unanimous decision and requested a review of the court's instructions on credibility and the rereading of certain testimony. This was done, and the jury retired to continue their deliberations.

Still later on May 27, 1983, the jury returned to the courtroom where County Court read the first of two notes: "Your Honor, since 11 A.M. the jurors have been unchanged. The vote stands eleven guilty, one not guilty. The dissenting juror has indicated that after all subsequent review of testimony and clarification of the law, has not and will not change the dissenting vote." The second note read: "Your Honor, after an additional hour of vigorous discussion, the count remains eleven guilty, one not guilty. The dissenting juror indicates that there is no possibility of the dissenting vote changing." The court then further instructed the jury:

"As I indicated to you in my initial charge, no juror has the right to erect an arbitrary standard and refuse to discuss the evidence or close his mind in judgment to the reasons advanced by his fellow jurors. You should always be open to reason.

"Consequently, I am going to send you back and direct you to continue your deliberations. Talk over the evidence. Advance your reasons and thoughts. You will return and continue your deliberations in this matter."

The jury then retired to deliberate further.

At 5:15 P.M. defense counsel again moved for a mistrial asserting that the jury had been deliberating since 9:30 A.M. and that they were not sent out to lunch. In response, County Court noted that the vote had changed considerably since 9:30 A.M. from seven not guilty, five guilty and denied the application for a mistrial. The jury subsequently returned to open

court where the court read the following communication from the jury: "Your Honor, the eleven jurors who are in agreement in their verdict believe that the dissenting juror is using different standards from the rest of us. However, the dissenting juror states 'I cannot change my mind in good conscience based on the evidence that has been presented in this trial.' " The court then advised the jury that it was of the opinion that if they "discuss the matter further, in further detail, and each advance their reasons or lack thereof, you will be moving in the right direction, perhaps". The jurors were then sent out to dinner and directed to deliberate further on their return. Subsequently, at about 10:00 P.M. the court sent the jury to a motel for the second night.

On May 28, 1983, while the jury was deliberating, defense counsel again applied to County Court for a mistrial. This application also was denied. The jury subsequently reported their verdict of guilty.

The amount of time a disagreeing jury should be kept together and whether a mistrial should be declared are matters of sound judicial discretion (People v Gonzalez, 115 AD2d 899, 900, appeal dismissed 68 NY2d 995; People v Blanchard, 105 AD2d 492, 494). The jury must have deliberated an extensive time and the court must be satisfied that agreement is unlikely within a reasonable time (see, Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 310.60, at 674).

Significantly, County Court made no effort in the instant case to satisfy itself, by inquiry of the jury or otherwise, that agreement was unlikely in a reasonable time (ibid.). In view of the many announcements that the jury was deadlocked and that one juror could not in good conscience change his or her vote, County Court should have inquired of the jury whether the deadlock was genuine and whether future deliberations would be fruitless (see, Matter of Plummer v Rothwax, 63 NY2d 243, 252). This case clearly turned on the credibility of witnesses; hence, a jury could easily become deadlocked (see, Matter of Owen v Stroebel, 65 NY2d 658, 661, cert denied sub nom. Owen v Judge of County Ct., 474 US 994; People v Gonzalez, supra, at 900). The continued resubmission of this case to the jury without proper inquiry and instruction clearly had a coercive effect on the jury's verdict.

Moreover, County Court clearly failed to balance its supplementary instruction by "stressing that 'the verdict must be the verdict of each individual juror, and not a mere acquies-

cence in the conclusion' of the others" *(People v Ali,* 65 AD2d 513, 514, *affd* 47 NY2d 920, quoting *Allen v United States,* 164 US 492, 501; *see, People v Andrews,* 109 AD2d 939, 940). The supplemental charge was obviously directed at the lone dissenting juror and was a clear message to that dissenter that he or she must agree with the majority, especially in light of County Court's repeated insistence that the jury continue to deliberate. Accordingly, the verdict was coerced and the case must therefore be remitted for a new trial.

We find that reversible error also occurred in this case when County Court abused its discretion by allowing evidence of other similar crimes to be introduced on redirect. At trial, defendant's confession to the December 24, 1982 robbery of Herzog, People's exhibit No. 3, was admitted into evidence and read to the jury. On cross-examination, Detective Stephen Voss, one of the interrogating officers who secured the confession, was questioned by defense counsel as to whether he participated in urging or threatening defendant in order to persuade him to sign exhibit No. 3. Voss was also asked if he hit or pushed defendant or if he told defendant something would happen to him if he failed to sign the confession. County Court was of the opinion that this line of questioning created an inference of police brutality suggesting the confession was involuntary and therefore defense counsel "opened the door" to further questions by the prosecutor to show what occurred during the interrogation.

Thereafter, the prosecution was allowed to ask Voss on redirect whether the taking of exhibit No. 3 was the only incident that Voss observed discussed between defendant and Gavigan. Voss responded that it was not, and the prosecution asked Voss to testify concerning the other confessions. Defendant's ensuing motion for a mistrial was denied. At the outset, we note that it is questionable whether the cross-examination "opened the door" to the questions allowed on redirect concerning the other confessions. However, even assuming that defense counsel's questioning of Voss opened the door, there is no doubt that the extent of the redirect examination concerning the other confessed crimes exceeded the bounds of discretion. The prosecution was improperly allowed to introduce indirectly prejudicial evidence against defendant that it could not introduce on its direct case. Such error also requires that defendant be afforded a new trial.

We have examined defendant's other claims of error and find them without merit.

Judgment reversed, on the law, and matter remitted to the

County Court of Albany County for a new trial. Mahoney, P. J., Kane, Weiss, Mikoll and Levine, JJ., concur.