People v Magnan (2019 NY Slip Op 05154)





People v Magnan


2019 NY Slip Op 05154


Decided on June 26, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
CHERYL E. CHAMBERS
JEFFREY A. COHEN
BETSY BARROS, JJ.


2014-06892
 (Ind. No. 7373/12)

[*1]The People of the State of New York, respondent,
v
Michael Magnan, appellant.


Lawrence J. Fredella, New York, NY, for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Jodi L. Mandel, and Jordan Cerruti of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Albert Tomei, J.), rendered July 1, 2014, convicting him of murder in the second degree, manslaughter in the first degree, attempted robbery in the first degree, and menacing in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
After a jury trial, the defendant was convicted of murder in the second degree, manslaughter in the first degree, attempted robbery in the first degree, and menacing in the second degree. The evidence at trial demonstrated that the defendant used a gun to bang on the window of a car driven by Steve Pintro while the car was stopped at a red light, causing Pintro to speed away. The trial evidence further demonstrated that the defendant attempted to rob the driver of a livery cab, Eric Martine, and his two passengers, Elizabeth Filatova and Nikita Grebelsky, at gunpoint while the cab was stopped at a red light. After demanding money and jewelry from Martine, Filatova, and Grebelsky, the defendant reached his hand into Martine's pants pocket. While the defendant was temporarily distracted, Martine punched the defendant in the face and drove off. The defendant shot into the livery cab several times, striking Grebelsky in the head and killing him. The defendant was apprehended shortly after the shooting a few blocks away from the crime scene and was identified by Martine as the shooter.
At trial, Martine and Pintro identified the defendant, and DNA and ballistics evidence linked the defendant to the murder weapon. The Supreme Court permitted the People to elicit testimony and introduce surveillance video evidence demonstrating that, prior to the commission of the charged crimes, a person matching the defendant's description and wearing clothing similar to that worn by the defendant when he was arrested threatened to commit a robbery outside a nightclub a few blocks away from the crime scene, robbed one of the nightclub's patrons of a gold chain, and threatened to come back and "shoot [the nightclub] up" if anyone tried to stop him.
To the extent that the defendant contends that the Supreme Court erred in its Sandoval ruling (see People v Sandoval, 34 NY2d 371), the ruling did not deprive the defendant of a fair trial, and any other error was harmless since the proof of the defendant's guilt was overwhelming and [*2]there was no reasonable possibility that the jury would have acquitted him had the error not occurred (see People v Grant, 7 NY3d 421, 425; People v Crimmins, 36 NY2d 230, 237-238). Martine identified the defendant as the person who attempted to rob him, Filatova, and Grebelsky, and who shot and killed Grebelsky. Pintro also identified the defendant as the person who menaced him with a gun. The descriptions of the person who committed the attempted robbery, murder, and menacing matched the defendant's physical characteristics and the clothing he was wearing at the time of his arrest. Surveillance video depicted an individual in the immediate vicinity of the area where the charged crimes occurred having the physical characteristics and wearing clothes matching the defendant. The defendant's DNA was found on the gun identified as the murder weapon. The murder weapon was recovered in close proximity to where the defendant was apprehended. Finally, after the defendant was apprehended and taken to the police precinct, an officer removed the defendant's sneakers and placed them on the floor, placed the defendant in a cell, and, upon returning to retrieve the sneakers, discovered a shell casing "in between the right and the left shoe." The evidence showed that this shell casing was fired from the gun that killed Grebelsky.
The defendant contends that the Supreme Court deprived him of a fair trial by permitting the People to introduce evidence of an uncharged robbery because the court failed to determine that the defendant committed that robbery, that the uncharged robbery evidence involved a unique modus operandi, or that the probative value of the uncharged robbery evidence outweighed its prejudicial effect. This contention is unpreserved for appellate review (see CPL 470.05[2]; People v Pettiford, 28 AD3d 687). In any event, the contention is without merit. Evidence of uncharged crimes is generally excluded under the Molineux rule (see People v Molineux, 168 NY 264; People v Harris, 117 AD3d 847, 854, affd 26 NY3d 1). Nevertheless, evidence of prior uncharged crimes may be received if it is relevant to some issue other than the defendant's criminal disposition, such as where it tends to show intent (see People v Morris, 21 NY3d 588; People v Arafet, 13 NY3d 460, 465; People v Ventimiglia, 52 NY2d 350, 359). "Where there is a proper nonpropensity purpose, the decision whether to admit evidence of [a] defendant's prior bad acts rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (People v Dorm, 12 NY3d 16, 19).
Here, we agree with the Supreme Court's determination to permit the People to elicit testimony and introduce surveillance video evidence related to the uncharged robbery. The elicited testimony was probative of the defendant's intent, which the defendant had placed into dispute by arguing, inter alia, that he was high on drugs and could not form the requisite intent or, alternatively, that he shot the gun recklessly in response to be being punched. The challenged evidence demonstrated that a man wearing identical clothing to that worn by the defendant when he was arrested stated his intention to rob people and actually robbed someone using the threat of a gun. It also demonstrated that a physical description given matched the defendant's height, complexion, and age. Thus, this evidence tended to show the defendant's intent to commit the charged crimes (see People v Alfaro, 19 NY3d 1075). The court providently exercised its discretion in determining that the probative value of the evidence in question outweighed the risk of prejudice to the defendant, and the limiting instruction given to the jury served to alleviate any prejudice resulting from the admission of the evidence (see People v Yusuf, 104 AD3d 881, 883).
The defendant's contention that certain remarks made by the prosecutor during summation deprived him of a fair trial is unpreserved for appellate review, since he failed to object to the challenged remarks at trial (see CPL 470.05[2]; People v Linley, 60 AD3d 696). In any event, the majority of the challenged comments constituted fair comment on the evidence or the reasonable inferences to be drawn therefrom, constituted fair response to arguments made by defense counsel in summation, or were within the broad bounds of rhetorical comment permissible in summation (see People v Baez, 137 AD3d 805). To the extent that a few of the comments were improper, these errors were not, either individually or collectively, so egregious as to have deprived the defendant of a fair trial (see People v Alphonso, 144 AD3d 1168).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are without merit.
RIVERA, J.P., CHAMBERS, COHEN and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court