People v Banks (2020 NY Slip Op 01525)





People v Banks


2020 NY Slip Op 01525


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

109817

[*1]The People of the State of New York, Respondent,
v
Zecary L. Banks, Appellant.

Calendar Date: January 14, 2020

Before: Clark, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Paul J. Connolly, Delmar, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (William D. VanDelinder of counsel), for respondent.



Devine, J.
Appeal from a judgment of the County Court of Chemung County (Rich Jr., J.), rendered September 8, 2017, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree (three counts), assault in the second degree (two counts) and criminal possession of a weapon in the second degree (two counts).
On July 28, 2016, a gunman opened fire in a bar and struck the apparent target and four bystanders. Defendant quickly became a suspect and was charged in an indictment with numerous offenses related to the shooting. Following a jury trial, defendant was found guilty of attempted murder in the second degree, assault in the first degree (three counts), assault in the second degree (two counts) and criminal possession of a weapon in the second degree (two counts). County Court sentenced defendant to 25 years in prison and five years of postrelease supervision upon the attempted murder in the second degree conviction related to the targeted victim, and imposed equal or lesser concurrent sentences for the assault in the first degree conviction related to that victim and both criminal possession of a weapon in the second degree convictions. County Court directed that the sentences for the remaining convictions — each relating to a distinct victim — run consecutively to the foregoing convictions and to each other. County Court sentenced defendant to 25 years in prison and five years of postrelease supervision upon each assault in the first degree conviction and seven years in prison and three years of postrelease supervision upon each assault in the second degree conviction. Defendant appeals.
Defendant first argues that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. He focuses upon the proof that he was the shooter,[FN1] which the People attempted to establish through the testimony of multiple individuals who were present at the time of the shooting. The eyewitnesses agreed that the shooter was a black man standing near the front door of the bar and, for the most part, described him as wearing a dark shirt and a red hat. Not all of the eyewitnesses could identify that man, but the three eyewitnesses who could either knew defendant or had seen him earlier in the evening and named him as the shooter. The People also elicited testimony that defendant stopped checking in with his bail bondsman and fled the state immediately after the shooting, which suggested consciousness of guilt and was "circumstantial corroborating evidence of identity" (People v Jones, 276 AD2d 292, 292 [2000], lv denied 95 NY2d 965 [2000]; see People v Gaines, 158 AD2d 540, 541 [1990], lv denied 76 NY2d 735 [1990]; People v Blanchard, 105 AD2d 492, 493 [1984]).
Viewing the foregoing proof in the light most favorable to the People, we discern a valid line of reasoning and permissible inferences from which a rational juror could find that defendant was the shooter (see People v Smith, 174 AD3d 1039, 1042 [2019]; People v Jiminez, 36 AD3d 962, 963 [2007], lv denied 8 NY3d 947 [2007]). A different conclusion was a reasonable possibility given the discrepancies in some eyewitnesses' accounts over time, as well as the testimony of defendant's acquaintance that defendant had an altercation with the targeted victim but did not produce a handgun and did not, by extension, intentionally harm that victim by repeatedly shooting him. After viewing the evidence in a neutral light and deferring to the jury's ability to assess the credibility of the witnesses, however, we cannot say that the verdict was against the weight of the evidence (see People v Hamilton, 176 AD3d 1505, 1506-1507 [2019], lv denied ___ NY3d ___ [Jan. 22, 2020]; People v Smith, 174 AD3d at 1042-1043).
Turning to defendant's complaints about the conduct of the trial, we perceive no abuse of discretion in County Court's refusal to give a missing witness charge with regard to two of the victims. Defendant gave no reason to believe that one of those victims, a bystander who had been shot in the arm, "could offer noncumulative, material testimony" as required (People v Franqueira, 143 AD3d 1164, 1169 [2016]). The other requested witness was the targeted victim and, although he may well have had noncumulative, material information, the People represented that he had not cooperated with investigators, denied knowing anything about the shooting and made clear that he would not testify. As such, there was no reason to believe that he would have been a favorable witness for the People so as to warrant a missing witness charge (see People v Stover, 174 AD3d 1150, 1153-1154 [2019], lv denied 34 NY3d 954 [2019]; People v Bessard, 148 AD2d 49, 53-54 [1989], lv denied 74 NY2d 845 [1989]).
Defendant next argues that County Court erred in admitting into evidence an operable .38-caliber revolver, containing five spent rounds, that was recovered from a nearby rooftop a few days after the shooting. Testing could not conclusively show that the revolver was used in the shooting or that it had been handled by defendant, but it remained relevant given the circumstances of its recovery and the fact that it could not be ruled out as the one used by the shooter (see People v Del Vermo, 192 NY 470, 481-482 [1908]; People v Cepeda, 158 AD3d 468, 469 [2018], lv denied 31 NY3d 1080 [2018]; People v Gonzalez, 88 AD3d 480, 480 [2011], lv denied 18 NY3d 924 [2012]). The revolver was accordingly admissible unless its probative value was "substantially outweighed by the danger that it [would] unfairly prejudice the other side or mislead the jury," and County Court attempted to reduce that danger by telling the jury why the revolver was being admitted into evidence and urging it to give the revolver whatever weight it deemed appropriate (People v Scarola, 71 NY2d 769, 777 [1988]; see People v Cepeda, 158 AD3d at 469). County Court's ameliorative efforts arguably fell short but, in our view, any resulting error was harmless "in light of the overwhelming testimony identifying defendant as [the] assailant" (People v Alfaro, 19 NY3d 1075, 1076 [2012]; see People v Bass, 277 AD2d 488, 491 [2000], lv denied 96 NY2d 780 [2001]).
Defendant next contends that the testimony of two witnesses that they feared retaliation for naming him as the shooter deprived him of a fair trial, a contention that is unpreserved for our review but that we will consider in the context of his related argument that defense counsel rendered ineffective assistance. The record reflects that both witnesses were initially hesitant to tell investigators who the shooter was, prompting defense counsel to cross-examine both on that point to undermine their identifications of defendant. After that attack on each witness's credibility, the People were free to, and did, elicit on redirect examination that a fear of retaliation was what motivated their actions (see People v Ochoa, 14 NY3d 180, 186 [2010]; People v Wright, 81 AD3d 1161, 1163 [2011], lv denied 17 NY3d 803 [2011]). We will not second-guess defense counsel's strategic decision to challenge the witnesses' identifications despite knowing that it would open the door to rehabilitative efforts (see People v Honghirun, 29 NY3d 284, 290 [2017]; People v Brewer, 266 AD2d 577, 579 [1999]). Moreover, we cannot fault defense counsel for failing to either raise a meritless objection to those rehabilitative efforts (see People v Allah, 57 AD3d 1115, 1118 [2008], lv denied 12 NY3d 780 [2009]) or request a limiting instruction that was inappropriate, and potentially counterproductive, in the absence of testimony regarding actual threats (see People v Wilson, 123 AD3d 626, 626 [2014], lv denied 25 NY3d 1210 [2015]; People v Howard, 7 AD3d 314, 314 [2004], lv denied 3 NY3d 675 [2004]; compare People v Randolph, 18 AD3d 1013, 1015-1016 [2005]).[FN2] There was accordingly nothing ineffective in defense counsel's handling of the issue and, after taking a broader view of counsel's entire performance, we are satisfied that defendant received meaningful representation (see People v Baldi, 54 NY2d 137, 146-147 [1981]; People v Perry, 148 AD3d 1224, 1225-1226 [2017]).
Finally, although the sentences imposed by County Court were not harsh or excessive, we do agree with defendant that they must all run concurrently. "[C]onsecutive sentences are appropriate only 'when either the elements of the crimes do not overlap or if the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct'" (People v Rollins, 51 AD3d 1279, 1282 [2008], lvs denied 11 NY3d 922, 930 [2009], quoting People v Ramirez, 89 NY2d 444, 451 [1996]; see People v Dean, 8 NY3d 929, 930-931 [2007]), and it is incumbent upon the People to prove that such is the case (see People v Brahney, 29 NY3d 10, 15 [2017]). Here, the eyewitnesses heard approximately five gunshots, four bullets were recovered from the victims and one bullet was recovered from the bar. The medical testimony revealed that the intended victim was shot three times and that only one bullet lodged in his body, while another victim had several through-and-through bullet wounds. There was no proof to show which, if any, of the victims were struck by a bullet that did not first pass through another victim (see People v Jones, 41 AD3d 507, 509 [2007], lv denied 9 NY3d 877 [2007]). Thus, in the absence of evidence that any of the assault convictions arose from a "separate and distinct" pull of the trigger by defendant, the consecutive sentences on those convictions cannot stand (id.; see People v Battles, 16 NY3d 54, 59 [2010], cert denied 565 US 828 [2011]; People v Jones, 122 AD3d 1161, 1161-1162 [2014]; cf. People v McKnight, 16 NY3d 43, 49-50 [2010]).
Clark, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the law, by directing that defendant's sentences shall run concurrently rather than consecutively, and, as so modified, affirmed.



Footnotes

Footnote 1: Defendant raised a specific objection to the proof of his identity in his trial motion to dismiss — a motion that he renewed at the close of his case — and we are satisfied that the question of whether legally sufficient proof established his identity is properly before us despite his failure to repeat the objection with regard to each count (see People v Finch, 23 NY3d 408, 412-413 [2014]; People v Gray, 86 NY2d 10, 19 [1995]).

Footnote 2: One witness testified that he was reluctant to get involved because he was a musician and was concerned about problems at future performances, while the other was worried because she knew friends and family members of defendant.